IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID U. TRAUT, | |
| Plaintiff, | Case No. 23-cv-03882 |
| v. | Judge Mary M. Rowland |
| AND Agency, LLC and others, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff David Traut brings this suit against Defendants AND Agency LLC d/b/a ANDx ("ANDx"), Adam Kamieniak, Darren Tait, Johann Ho, and Karen Bell, individually for various state law claims, including breach of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 (Counts I-V against all Defendants), breach of contract (Count VI against ANDx), and common law fraud (Counts VII-Counts VIII against ANDx and Kamieniak).[1] [1]. For the reasons stated herein, Defendants ANDx, Kamieniak, and Tait's motion to dismiss [16] is granted in part and denied in part. Defendant Ho's motion to dismiss [26] is denied. Defendants' answer to the complaint is due by April 24, 2024.

I. **Background**

The following factual allegations are taken from the Complaint [1-1] and are accepted as true for the purposes of the motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

---

[1] It appears that Karen Bell has not yet been served summons.

1

Plaintiff David U. Traut ("Traut"), a citizen of Wisconsin, began working for Defendant ANDx as a Senior Vice President of Technology Sales on or about June 15, 2021. *Id.* ¶ 1. At all relevant times, ANDx maintained its headquarters and principal place of business at 1100 E. Woodfield Rd., Schaumburg, Illinois 60173. Defendant ANDx was a limited liability company organized and existing under the laws of the state of Illinois, beginning in 2009 when it was founded until December 28, 2020. *Id.* ¶ 2. *Id.* On December 28, 2020, the company reincorporated in the state of Florida for asset protection purposes as it faced diminishing revenue and financial uncertainty. *Id.*

Defendant Adam T. Kamieniak ("Kamieniak") was an Illinois citizen, residing in St. Charles, Illinois, and the company's President and Chief Executive Officer. *Id.* ¶ 3. He also owns a 70% membership interest in ANDx and is a key decision maker responsible for determining company policy, terms, and working conditions. *Id.* Defendant Darren R. Tait is an Illinois citizen, residing in Chicago and Pinegree Grove, Illinois, and served as Chief Operating Officer. *Id.* ¶ 4. Tait owns a 30% membership interest. *Id.* Defendant Joann Ho was a Canadian citizen residing in Toronto, Canada, and ANDx's Chief Financial Officer. *Id.* ¶ 5. Ho also provided Traut with investment information about, and access to, the subject Annuity upon his termination of employment by ANDx. *Id.* Defendant Karen Bell ("Bell") was a Canadian citizen, residing in Toronto, Canada, and was the Company's Chief Human Resources Officer. *Id.* ¶ 6. Kamieniak, Tait, Ho, and Bell all served on the company's board of directors. *Id.* ¶¶ 3-5. Each individual Defendant played key decision-making

roles in the company, along the lines of Kamieniak's employment-related duties. *Id*. ¶¶ 4-6.

On April 14, 2021, Traut entered into a written Employment Agreement governing the terms and conditions of his employment with ANDx as Senior Vice President of Technology, Sales. *Id*. ¶ 9. The Agreement entitled Traut to various streams of compensation for his employment, including an annuity to be funded by ANDx in the sum of $522,828.48. *Id*. ¶ 10. Under the Employment Agreement, Traut was immediately vested in the Annuity as of June 15, 2021, when his employment began, as consideration for his willingness to (1) accept employment with ANDx, leaving AT&T, his former employer of 18 years, and (2) forego receiving compensation at AT&T similar to the principal value of the Annuity. *Id*. ¶ 11. The Employment Agreement required ANDx to fully fund Traut's annuity by March 31, 2023, regardless of his employment status or job performance. *Id*. ¶ 12.[2]

From June 15, 2021, to November 15, 2022, the period of Traut's employment with ANDx, he regularly attended in-person business meetings in Illinois. *Id*. ¶ 13. At all relevant times, the company-maintained space at its Schaumburg, Illinois facility for Traut to conduct business if needed. *Id*. ¶ 14. Traut serviced and met with ANDx customers in Illinois and solicited prospective Illinois customers as well. *Id*. ¶ 15. Traut also supervised various ANDx employees who resided and worked in Illinois

---

[2] The Agreement reads as follows: **VESTING PROVISIONS:** The Plan will vest in full on your employment start date with the Company. **TERMINATION OF THE PLAN:** On March 31, 2023, if the Participant has not died prior to this date, the Plan will have $522,828.48 deposited into a Company account [ ] separated from its operating funds . . . [1-1] ¶ 12.

3

and received a paycheck from ANDx's Illinois bank account. *Id*. ¶ 16. Traut's actions were performed in the ordinary course of his employment with ANDx. *Id*. ¶ 17.

On November 15, 2022, the company terminated Traut's employment without cause. *Id*. ¶ 18. Traut's termination letter was signed by Kamieniak, and states, "In addition, your annuity agreement with the Company survives the termination of your employment. Please contact Johann Ho, CFO before March 31, 2023, to discuss the agreement and determine the investment strategy for those funds." *Id*. ¶ 19. After his termination, Traut attempted to communicate with ANDx and Ho regarding his Annuity. *Id*. ¶ 20. Despite his efforts, Ho and ANDx failed and refused to have any substantive communications with Traut regarding his Annuity *or* if/how his Annuity funds would be invested by ANDx on his behalf, or by him personally. *Id*. ¶ 21.

Traud alleges that despite his demands, Ho and ANDx have (1) failed and refused to fund the Annuity; (2) failed to properly separate its funds from its operating funds as promised and required; (3) failed to allow Traut to specify the investment strategy for the Annuity; and (4) failed to provide the Annity to Traut as required by the Employment Agreement, and in consideration for his joining and performing work at ANDx. *Id*. ¶ 22.

On May 1, 2023, Traut filed suit in state court. [1-1]. Defendants timely removed this action to federal court on June 20, 2023. [1] (Notice of Removal). The complaint alleges breach of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 (Counts I-V against all Defendants), breach of contract (Count VI against ANDx), and common law fraud (Counts VII-Counts VIII against ANDx and

4

Kamieniak). Traut seeks compensatory and punitive damages for the alleged misconduct. Before the Court is Defendants' motions to dismiss Traut's complaint for lack of personal jurisdiction, failure to state a claim, and failure to meet heightened pleading standard for fraud claims under FRCP 9(b). *See* [16]; [26].

## II. Standard

A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over it. The party asserting jurisdiction has the burden of proof. *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)). The plaintiff bears the burden of establishing personal jurisdiction, but where the issue is raised on a motion to dismiss, "the plaintiff need only make *prima facie* showing of jurisdictional facts." *Purdue Research Found v. Sanofi-Synthelabo*, S.A., 338 F.3d 773, 782 (7th Cir. 2003). To determine whether the plaintiff has met his burden, the Court may consider affidavits from both parties. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). The Court will read the complaint liberally and draw every reasonable inference in favor of the plaintiff. *Central States, Se. & SW Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 879, 878 (7th Cir. 2006) (internal citation omitted). Once the defendant has submitted evidence in opposition to the Court's exercise of jurisdiction, the "plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783. Any dispute concerning relevant facts is resolved in favor of the plaintiff. *Id.* at 782-83.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990).

5

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

6

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Borsellino v. Goldman Sachs Crp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). This ordinarily requires describing "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

### III. Analysis

**A. The Court may exercise General Jurisdiction over Defendants ANDx and Ho.**

Defendants ANDx and Ho first argue that the Court does not have personal jurisdiction, as ANDx is now incorporated in the state of Florida and Ho is a Canadian citizen.[3] [17] at 5-9; [27] at 3-8. The Court disagrees.

A district court sitting in diversity has personal jurisdiction over a defendant only if the state court in which it sits would have jurisdiction. *Purdue*, 388 F.3d at 779. In Illinois, general personal jurisdiction exists when defendants are citizens of the state, or the causes of action at issue in the case arise out of defendants' contacts with the state. 735 ILCS 5/2-109(a)(1), (b)(1)-(4). It is well established that those contacts with the forum state must be "continuous and systematic" in nature. *Tamburo*, 601 F.3d at 701.

Here, according to the complaint, ANDx was originally incorporated in Illinois and had its principal place of business in Schaumburg, Illinois. Traut has submitted an affidavit with accompanying exhibits to provide affirmative evidence of personal

---

[3] As Illinois residents, Kamieniak and Tait do not dispute this Court's jurisdiction over them.

jurisdiction. In the affidavit, Traut asserted that his duties included building a division of the company, located in Illinois, to sell technology solutions in-state. [21-1] at 2. Traut received business cards to give ANDx customers, prospective customers, contractors, agents, and suppliers with the company's Schaumburg, Illinois office address on it. *Id*. at 3. Traut was also told to use the Schaumburg office for meetings with customers and any other meetings necessary for his job duties. *Id*. Further, Traut's ANDx profile on the Employee Resources System for ANDx showed that he was an employee in its "Chicago" location. *Id*. at 16.

During his employment with ANDx, Traut had face-to-face meetings with customers and prospective customers in Illinois approximately forty-seven times. *Id*. at 6-14; [21] at 2. Traut stated that he spent dozens of hours in Illinois in furtherance of his employment duties, and supervised employees who resided in Illinois. [21-1] at 14-15. ANDx also paid Traut through a bi-weekly paycheck from an Illinois bank account, and Traut filed his tax documents showing the ANDx's address located at the Schaumburg, Illinois office. *Id*. at 15. In fact, ANDx conceded in a supplemental filing that it maintained its original office in Schaumburg, Illinois, even after it re-incorporated in Florida. *See* [29] at 2. ("[D]efendants wish to retract and clarify that ANDx did not shut down the Schaumburg office or terminate the lease for this office."). As ANDx had a Schaumburg, Illinois office and continuous contacts in the state of Illinois, this Court has personal jurisdiction over ANDx.

The Court also has personal jurisdiction over Defendant Ho. Traut states that Ho gave him direction on virtually all financial and legal matters for ANDx on dozens

8

of occasions. [30-1] at 2. These communications included multiple emails per week, telephone, and Microsoft Teams meetings. *Id*. at 3. During many of these communications, Traut was physically present in the state of Illinois. *Id*. Ho directed Traut on how to build the new division in Illinois in the "Great Lakes area", directing financing and payments of ANDx business operations through its Illinois financial institutions. *Id*. Ho also helped establish sales and master agent relationships with companies and individuals headquartered in Illinois. *Id*. Further, Ho managed financial and legal staff, contractors, and contracts, payment procedures, and related documents for ANDx, some of which were in Illinois. *Id*. Ho also led ANDx clients, prospective clients, and suppliers to believe that ANDx's main operating location was at the Schaumburg, Illinois office. *Id*. at 4. Finally, Traut states that customer invoices and wire transfers, (which the Court reasonably infers that Ho managed as part of his duties), were to be made to the Schaumburg, Illinois address, and a bank located in Elk Grove Village, Illinois respectively. *Id*.

Ho argues that sporadic or sparse communications do not afford courts with general jurisdiction over a person. *See Costa v. Ramiaiah*, 2023 WL 5581261 (N. D Ill. Aug. 29, 2023); *Sullivan v. Bickler*, 360 F.Supp. 3d 778, 784 (N.D. Ill. 2019). That is not what Traut has alleged. Rather, Traut alleges that Ho directly supervised him and communicated with him while Traut was located primarily in Illinois, directed business operations through Illinois financial institutions, and led third parties to believe that the Schaumburg, Illinois office was the main operating location. Ho also had numerous and substantial contact with Illinois because of his general

9

employment duties, not solely because of his contacts with Traut. Other cases cited by Ho are therefore likewise unpersuasive.[4]

The Court maintains personal jurisdiction over all Defendants.

### B. Traut can avail himself of IWPCA protections.

The Court next turns to the Illinois Wage Payment and Collection Act ("IWPCA") claims at issue (Counts I-IV). Defendants argue the IWPCA claims fail as a matter of law because Traut is a Wisconsin resident and has not performed sufficient work in Illinois to avail himself of the statute. [17] at 10-12; [27] at 8-12. The Court disagrees.

To state a claim under the IWPCA, a plaintiff must show that: (1) he had an employment agreement with the employer that required wage payments or financial compensation; and (2) that the defendants were considered employers under the IWPCA. *See Landers-Scelfo v. Corporate Office Systems, Inc.*, 827 N.E.2d 1051, 1067 (Ill. App. Ct. 2005). The Act applies to all employees and employers in the state, including an employee who resides in another state but performed work for an Illinois employer. *Adams v. Catrambone*, 359 F.3d 858, 863 (7th Cir. 2004). The Act's purpose is to "protect employees *in Illinois* from being stiffed by their employers." *Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998). However, the Act does not have an "extra-territorial reach". *Id*.

Here, as explained *supra,* Traut worked for ANDx, which had an office location in Illinois held out by senior members of the company as its headquarters during his

---

[4] *Adv. Tactical Ordinance Sys., LLC b. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 20140); *Helicopters Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)

10

period of employment. ANDx is an Illinois-based employer, maintaining a "Chicago location" in Schaumburg, Illinois, utilizing Illinois financial institutions, operating an Illinois division seeking to work with Illinois customers, and employing Illinois residents. The IWPCA thus applies to ANDx. Traut also performed a substantial amount of work in Illinois. *See Adams*, 359 F.3d at 865 (finding the Act applied to a Michigan resident who had performed work in Illinois); *see also McGreal v. Semka*, 836 F. Supp. 2d 735, 740 (N.D. Ill. 2011) (allowing an IWPCA claim to go forward where the employer maintained an Illinois office, marketed its services in Illinois, and conducted substantial business in the state).

Defendants cite *Glass* to support their argument that the IWPCA does not have an extra-territorial reach, but *Glass* is distinguishable for two reasons. In *Glass*, (1) even though the employer's principal place of business was in Illinois, the non-resident employee was in Spain, not in the United States; and (2) the plaintiff did not perform any work in Illinois—all of his duties were performed abroad. *Id*. at 1000. Here, to the contrary, Traut is undoubtedly domiciled in the U.S. and substantially worked in Illinois. Indeed, Traut performed most of his duties in Illinois, working with Illinois customers and supervising Illinois based employees. The other cases cited fail for the same reason.

The Act also provides that "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13. Thus, liability under that Act "can be imposed upon . . . any officers of a

corporation or agents of an employer who knowingly permitted the Wage Act violation." *McGreal*, 836 F. Supp. 2d at 741 (citing *Andrews v. Kowa Printing Corp.*, 838 N.E.2d 894 901 (Ill. App. Ct. 2001)). Traut has alleged sufficient facts in his complaint to hold Kamieniak, Tait and Ho, individually, liable under the IWPCA at this stage.

The IWPCA claims may therefore proceed.

**C. The fraud claims are dismissed.**

Defendants ANDx and Kamieniak finally argue that Traut's fraud claims fail under the heightened 9(b) pleading standard, that he cannot recover in tort (under the IWPCA) for what is essentially a breach of contract, and that Kamieniak cannot be personally liable for fraud. [17] at 12-15. Traut argues that he states a valid claim for a scheme to defraud against both Defendants. [21] at 11-14.

Under Fed. R. Civ. Pro. 9(b), plaintiffs must plead the circumstances constituting fraud with particularity: the who, what, where, why and how. *See Borsellino*, 477 F.3d at 507 (internal citations omitted). "To state a fraud claim under Illinois law, a plaintiff must allege that the defendant: (i) made a false statement of material fact, (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff." *Reger Development, LLC v. National City Bank*, 592 F.3d 759, 766 (7th Cir. 2010) (citing *Redarowicz v. Ohlendorf*, 441 N.E.2d 324, 382 (Ill.

App. Ct. 1982)). Traut argues he has satisfied this requirement, but his claim faces a bigger hurdle: he has waived the issue. [5]

Defendants argue that Traut's fraud claims are duplicative of his breach of contract and IWPCA claims. [17] at 13. Defendants' unrebutted argument is correct. Because Traut's IWPCA claims survive, his fraud claim does not. *See Bruger v. Olero, Inc.*, 434 F. Supp. 3d 647, 657 (N.D. Ill. 2020) (dismissing plaintiffs' fraud claims which had the same allegations underlying their IWPCA because "a party may not recover in tort for a claim, like an IWPCA claim, that sounds in breach of contract.") (citing *Tsybikov v. Doval*, 2019 WL 5208869, at *3 (N.D. Ill. Oct. 16, 2019)). Traut also fails to address Defendants' argument that there is no basis to hold Kamieniak personally liable for fraud, nor provides a reason for the Court to pierce the veil and allow the claim to proceed. *Id.* at 14-15. Traut has thus forfeited his fraud claims.

## IV. Conclusion

For the stated reasons, Defendants' ANDx, Kamieniak, and Tait's motion to dismiss [16] is denied in part and granted in part. Counts I, II, III (IWPCA claims) may proceed against all Defendants. ANDx and Kamieniak are dismissed from Counts VII and VIII (fraud) with prejudice. Defendant Ho's motion to dismiss [26] is denied. Count IV (IWPCA claim) may proceed. All Defendants to answer the complaint by April 24, 2024.

---

[5] *See Boogard v. Nat'l Hockey League,* 891 F.3d 289, 295 (7th Cir. 2018) ("[A] district court may hold a claim forfeited if a plaintiff fails to respond to the substance of the defendant's motion to dismiss"); *see also Bonte v. U.S. Banks, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("[f]ailure to respond to an argument … results in waiver.").

E N T E R:

Dated: March 27, 2024

MARY M. ROWLAND
United States District Judge